**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

UNITED STATES OF AMERICA,

     v.

KEITH GRIFFIN,

Case No. 25 CR 463

Judge LaShonda A. Hunt

**DEFENDANT KEITH GRIFFIN'S OBJECTIONS TO THE PRESENTENCE**
**INVESTIGATION REPORT AND SENTENCING POSITION**

**TABLE OF CONTENTS**

**PAGE(S)**

I.      INTRODUCTION ...................................................................................................1

II.      SUMMARY OF RELEVANT FACTS ...................................................................2

       A.      Procedural History ....................................................................................2

       B.      Mr. Griffin's Personal History..................................................................2

III.      OFFENSE CLASSIFICATION................................................................................3

       A.      Supreme Court Precedent Holds Contempt is a Misdemeanor if
the Penalty Imposed is a Misdemeanor Penalty .......................................4

       B.      Six of Seven Circuits Agree that Mechanical Application of § 3559
Is Wrong....................................................................................................5

       C.      Seventh Circuit Precedent Expressly States that Classification Must Be Based on
the Sentence Imposed ...............................................................................6

IV.      OBJECTIONS TO THE GUIDELINES CALCULATION ...................................8

       A.      The Classification of the Offense Changes the Base Offense Level .......8

       B.      The Vulnerable Victim Enhancement Does Not Apply ...........................9

       C.      The Abuse of Position of Trust Enhancement Does Not Apply............10

       D.      Mr. Griffin is a Zero-Point Offender Under § 4C1.1; Revised Calculation ..........11

V.      SENTENCING POSITION REGARDING § 3553(a) FACTORS ...................................11

       A.      A Non-Custodial Sentence Avoids Unwarranted Disparity
(§ 3553(a)(6))..........................................................................................12

       B.      Mr. Griffin's Characteristics Favor a Non-Custodial Sentence
(§ 3553(a)(1))..........................................................................................13

       C.      No Purpose of Sentencing Requires Incarceration (§ 3553(a)(2))........14

       D.      Probation is Available (§ 3553(a)(3)).....................................................14

VI.      CONCLUSION.....................................................................................................15

# TABLE OF AUTHORITIES

**PAGE(S)**

## SUPREME COURT CASES

*Cheff v. Schnackenberg*
        384 U.S. 373 (1966)...............................................................................................4, 7

*Frank v. United States*
        395 U.S. 147 (1969)................................................................................ *passim*


## FEDERAL CASES

*United States v. Ashqar*
        582 F.3d 819 (7th Cir. 2009), ...............................................................................6

*United States v. Battle*
        No. 17-cr-67, 2017 WL 2983891 (W.D. Pa. July 12, 2017)...................................6

*United States v. Broussard*
        611 F.3d 1069 (9th Cir. 2010) ..............................................................................6

*United States v. Carpenter*
        91 F.3d 1282 (9th Cir. 1996) ..............................................................................3,6

*United States v. Cohn*
        586 F.3d 844 (11th Cir. 2009) ..............................................................................5

*United States v. Cruz*
        317 F.3d 763 (7th Cir. 2003) ................................................................................9

*United States v. Holmes*
        822 F.2d 481 (5th Cir. 1987). ...............................................................................5

*United States v. Myers*
        302 Fed. Appx. 201 (4th Cir. 2008)......................................................................6

*United States v. Owens*
        161 F.4th 439 (6th Cir. 2025) ...............................................................................6

*United States v. Trudeau*
        812 F.3d 578 (7th Cir. 2016) ...........................................................................6,7,8

*United States v. Wright*
        812 F.3d 27 (1st Cir. 2016). ..................................................................................6

**FEDERAL STATUTES**

18 U.S.C. § 1.................................................................................................................4,5

18 U.S.C. § 3559....................................................................................................3,4,5,6,8

18 U.S.C. § 3553................................................................................................... *passim*

18 U.S.C. § 401..................................................................................................... *passim*

28 U.S.C. § 994(j)...............................................................................................................15

**UNITED STATES SENTENCING GUIDELINS**

U.S.S.G. § 1B1.9.................................................................................................................8

U.S.S.G. § 2X5.1 ...............................................................................................................8

U.S.S.G. § 2X5.2 ...............................................................................................................9

U.S.S.G. § 3B1.3...............................................................................................................10

U.S.S.G. § 5C1.1...............................................................................................................14

**FEDERAL RULES OF CRIMINAL PROCEDURE**

Federal Rule of Criminal Procedure 11(c)(1)(A)................................................................2

Federal Rule of Criminal Procedure 32 ..............................................................................1

Federal Rule of Criminal Procedure 42(b)..........................................................................6

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 25 CR 463 |
| v. | Judge LaShonda A. Hunt |
| KEITH GRIFFIN, | |

**DEFENDANT KEITH GRIFFIN'S OBJECTIONS TO THE PRESENTENCE INVESTIGATION REPORT AND SENTENCING POSITION**

Defendant Keith Griffin, by and through his counsel of record, Werksman Jackson & Quinn LLP, respectfully submits the following objections to the Presentence Investigation Report ("PSR") and memorandum in support of his position on sentencing. This position will be based upon the PSR, the plea agreement, all exhibits filed herewith, and any argument that may be presented at the sentencing hearing pursuant to Federal Rule of Criminal Procedure 32.

## I.     INTRODUCTION

Keith Griffin respectfully requests a sentence of probation. He was the least culpable participant in this offense, he has already paid dearly for his failure to act, and no purpose of sentencing is served by a custodial term. The Government and Probation recommend three months' imprisonment. In related case United States v. Lira, No. 23 CR 54, David Lira received a four-month prison sentence, and both sides agree that "Lira's conduct was more egregious than Griffin's conduct." Government's Version of the Offense ("GVO"), p. 1. Probation agrees, concluding that Mr. Griffin "was less culpable and should not receive a higher sentence than Lira." Sentencing Recommendation Letter, p. 4. Mr. Griffin establishes herein that a non-custodial sentence is sufficient to meet the purposes of sentencing.

Keith Griffin was an associate attorney at the Girardi Keese firm. He had no authority over the client trust account. He could not sign a check, approve a wire, or view an account balance. His culpability was drastically less than any other co-defendant, including that of Mr. Lira, who was Thomas Girardi's son-in-law and second in command. Mr. Griffin has admitted without reservation to the conduct he did commit. He knew in the spring of 2020 that Thomas Girardi was violating Judge Durkin's order, and, although he repeatedly urged Girardi to pay the clients, he never brought the issue to the Court. He told Probation that he could have and should have done more, and that he regrets not being "stronger in character." PSR ¶ 31. His crime was a failure to act. It is serious, as Mr. Griffin readily acknowledges. But he did not steal from the Lion Air victims or direct their settlement funds, and he did not lie to Judge Durkin.

As set forth below, Mr. Griffin objects to Probation's conclusion that criminal contempt under 18 U.S.C. § 401 is a Class A felony making him ineligible for probation. Supreme Court and Seventh Circuit authority agree that the classification of contempt is based on the sentence

imposed; where a misdemeanor sentence is imposed, the offense is a misdemeanor. Mr. Griffin also objects to Probation's calculation of the Guidelines, which either do not apply at all if the offense is classed as a Class B misdemeanor, or are at a level where probation is within range. Considering the § 3553(a) factors together, a sentence of probation is the most appropriate sentence for Mr. Griffin.

## II. SUMMARY OF RELEVANT FACTS

### A. Procedural History

On August 19, 2025, Mr. Griffin made his initial appearance in this matter and was released on a $10,000 unsecured bond. PSR, p. 1. Prior to any evidentiary hearings or motions practice, Mr. Griffin appeared before this Court on March 5, 2026, and pleaded guilty to one count of contempt, in violation of 18 U.S.C. § 401(3), pursuant to a written plea agreement governed in part by Federal Rule of Criminal Procedure 11(c)(1)(A). PSR ¶ 3. He has fully complied with the conditions of his release. PSR ¶ 4.

### B. Mr. Griffin's Personal History

Keith Griffin was born on April 17, 1972, in Los Angeles, California, where he has lived his entire life. PSR ¶¶ 55, 62. Mr. Griffin had a "good" middle-class childhood, with parents who were "never wealthy" but "got by." PSR ¶ 56. Mr. Griffin still lives a few blocks from his parents and visits them weekly. PSR ¶ 58. Mr. Griffin married Nancy Culver in July 2000. The couple separated in 2011 and divorced amicably in 2023. PSR ¶ 59. Mr. Griffin and Ms. Culver have three adult children: Benjamin (24), Luke (19), and Allison (18). Ibid. Mr. Griffin has strong relationships with his children and speaks with them frequently. Ibid. Mr. Griffin lives with his long-term partner Desiree Fernandez. PSR ¶¶ 60, 62. Ms. Fernandez describes Mr. Griffin as "reliable, good-tempered, a good friend, and an excellent father," and talked about his enormous

2

remorse for this offense. PSR ¶ 61. Letters from Mr. Griffin's family, friends, and former colleagues are submitted as Exhibit A.

Mr. Griffin graduated from Loyola High School in 1990, earned a bachelor's degree in history from UCLA in 1995, and earned his Juris Doctorate from Southwestern University School of Law in May 1999. PSR ¶¶ 75-77. Mr. Griffin joined the Girardi Keese law firm, where he started as a law clerk in 1998, and stayed until the firm's collapse in 2020. PSR ¶ 85; GVO, p. 1. He was a salaried associate throughout. He held no ownership interest, no signatory authority over any firm account, and played no role in the firm's finances. PSR ¶ 6; Plea Agreement ¶ 7. After the collapse of Girardi Keese, Mr. Griffin opened a solo practice and worked for two firms between 2021 and 2025. PSR ¶¶ 82-84. Effective July 11, 2025, the California State Bar suspended Mr. Griffin's license for fifteen months, with a three-year probationary period and a stayed three-year suspension of his license. Exhibit B; PSR ¶ 78.

### III.    OFFENSE CLASSIFICATION

For the vast majority of federal crimes, classification under 18 U.S.C. § 3559 is a mechanical exercise. Congress specifies a maximum term of imprisonment in the statute, and that statutory maximum sets the offense classification under § 3559's rubric. The Supreme Court and Circuits around the country have agreed that criminal contempt pursuant to 18 U.S.C. § 401 is different because the statute does not specify a maximum penalty. The Court is authorized to penalize "by fine or imprisonment, or both, at its discretion." That absence of a prescribed penalty gives courts the flexibility to address the wide range of conduct that can constitute contempt, which "include[s] a broad range of conduct, from trivial to severe." United States v. Carpenter, 91 F.3d 1282, 1284 (9th Cir. 1996). This flexibility chafes against the strict framework of § 3559. As set

3

forth below, binding Supreme Court and Seventh Circuit precedent establishes that contempt is a misdemeanor if less than one year of imprisonment is imposed.

### A. Supreme Court Precedent Holds Contempt is a Misdemeanor if the Penalty Imposed is a Misdemeanor Penalty

In 1966, the Supreme Court addressed this issue where a defendant, having been convicted under § 401 and sentenced to six months' imprisonment, appealed that he had been entitled to a jury trial because the offense could be punished by up to life imprisonment. Cheff v. Schnackenberg, 384 U.S. 373 (1966). The Court established two important holdings for the instant case. First, criminal contempt is "an offense *sui generis*." Id., at 380. Second, to determine the correct classification of a contempt charge, one looks to the sentence actually imposed. Ibid. At that time, the classification function now served by § 3559 was contained in 18 U.S.C. § 1, classifying offenses simply as felonies ("Any offense punishable by death or imprisonment for a term exceeding one year is a felony") or misdemeanors ("Any other offense is a misdemeanor."). Since the defendant only received six months, the Court held that his contempt charge was a misdemeanor. Ibid.[1]

The Supreme Court reached the same conclusion again in Frank v. United States, 395 U.S. 147 (1969), observing that "Congress, perhaps in recognition of the scope of criminal contempt, has authorized courts to impose penalties but has not placed any specific limits on their discretion; it has not categorized contempts as serious or petty. . . .[I]n prosecutions for criminal contempt where no maximum penalty is authorized, the severity of the penalty actually imposed is the best indication of the seriousness of the particular offense." Id. at 149. The holding in Frank was that

---

[1] In fact, the Court ruled that the offense was a "petty offense," a subset of misdemeanors where the penalty does not exceed six months' imprisonment. Finding contempt to be a petty offense is an implicit finding that it was a misdemeanor; only misdemeanors can be petty offenses.

sentences for criminal contempt of up to six months may constitutionally be imposed without a jury trial – that conclusion would be unconstitutional were contempt always a felony.

Although these Supreme Court precedents predate 18 U.S.C. §3559, the classification scheme in existence at the time of the holdings (18 U.S.C. § 1) was also based on the maximum penalty for the offense. And the Supreme Court twice held that (1) contempt is different from offenses where a maximum is expressly prescribed; (2) contempt is *sui generis*; (3) classification based on maximum penalty does not apply to contempt; (4) contempt can be a misdemeanor; and (5) whether contempt is a misdemeanor is based on the sentence imposed.

**B. Six of Seven Circuits Agree that Mechanical Application of § 3559 Is Wrong**

Since the advent of § 3559 in 1984, seven circuits have squarely confronted whether to apply the § 3559 rubric to criminal contempt. Six circuits – the Third, Fifth, Sixth, Seventh, Ninth, and Eleventh – have rejected the notion that contempt is a Class A felony.

The Fifth and Eleventh Circuits have concluded that contempt is neither a felony nor a misdemeanor. The Eleventh Circuit held that § 401 "cannot be classified pursuant to § 3559," and "[u]niform classification of criminal contempt would be inconsistent with the breadth of § 401." United States v. Cohn, 586 F.3d 844, 848-849 (11th Cir. 2009); see also Cohn, 586 F.3d at 852: "[T]he district court. . . erred in classifying criminal contempt as a Class A felony." The Fifth Circuit observed that "the Supreme Court has never characterized contempt as either a felony or a misdemeanor but rather has described it as an offense sui generis," and ruled in line with that precedent. United States v. Holmes, 822 F.2d 481, 493 (5th Cir. 1987).

The Third, Sixth, and Ninth Circuits agree that contempt is not classified under the § 3559 rubric, and they conclude that it should be classified on a case-by-case basis. The Third Circuit ruled: "to classify . . . criminal contempt we look to the actual sentence imposed." In re Solomon,

5

465 F.3d 114, 119 (3d Cir. 2006). In that case the Court classified contempt as a Class B misdemeanor because it was punished by five months' imprisonment. Ibid.; see also 18 U.S.C. § 3559(a)(7).[2] The Ninth Circuit also classifies on a case-by-case basis, based on the statutory maximum for the most analogous offense. United States v. Broussard, 611 F.3d 1069 (9th Cir. 2010). "It would be unreasonable to conclude that. . . Congress meant to brand all contempts as serious and all contemnors as felons." United States v. Carpenter, 91 F.3d 1282, 1284 (9th Cir. 1996). In 2025, the Sixth Circuit held that contempt can be a felony or a misdemeanor: "to determine whether to treat contempt as a felony. . .we examine whether the misconduct constituting contempt is akin to conduct treated as felonious under the federal criminal code." United States v. Owens, 161 F.4th 439, 443 (6th Cir. 2025).[3]

Only the First Circuit has held that contempt must be classified as a Class A felony. United States v. Wright, 812 F.3d 27 (1st Cir. 2016). No other circuit has followed this holding. The Fourth Circuit was asked to follow suit and expressly declined to do so. United States v. Myers, 302 Fed. Appx. 201, 206 (4th Cir. 2008).

### C. Seventh Circuit Precedent Expressly States that Classification Must Be Based on the Sentence Imposed

The only Seventh Circuit case to squarely address classification is United States v. Trudeau, 812 F.3d 578 (7th Cir. 2016).[4] The question there was the applicability of the Speedy Trial Act,

---

[2] One District Judge has chosen not to follow his Circuit's precedent, finding that it only applied to cases in which the Court finds the contempt and summarily sentences the defendant pursuant to Rule 42(b). United States v. Battle, No. 17-cr-67, 2017 U.S. Dist. LEXIS 107777, 2017 WL 2983891 (W.D. Pa. July 12, 2017). The Third Circuit did not so limit its ruling, though it easily could have.

[3] The Owens Court noted that whether an offense is a felony or a misdemeanor also affects the calculation of the Guidelines, as will be discussed below. Owens, 161 F.4th at 442.

[4] In its Wright decision discussed above, the First Circuit cited to United States v. Ashqar, 582 F.3d 819, 825 (7th Cir. 2009), for the proposition that "the statutory maximum for criminal contempt is life." The First Circuit acknowledged that it had to "take a second step in reasoning" to hold that criminal contempt is a Class A felony. The Court in Ashqar did not discuss classification. Its statement about the maximum

which does not apply to offenses punishable by up to six months' imprisonment. The procedural posture of Trudeau's contempt differs from the instant case, to be sure. In Trudeau, the district court issued an order to show cause why Trudeau should not be held in contempt and sentenced up to six months' imprisonment. Id. at 581. Mr. Griffin's case has proceeded by indictment, and his maximum penalty has not been so capped. Nevertheless, the approach articulated by the Seventh Circuit to classifying contempt is entirely applicable to the case before this Court. The Seventh Circuit began by describing that "contempt carries no statutorily authorized maximum punishment." Id. at 585. It then turned to the Supreme Court cases discussed above, Cheff and Frank: "Congress has not categorized contempts as serious or petty. . . contempt is an offense sui generis." Ibid. (cleaned up). The Court then states with approval the rule from Frank that "the severity of the penalty *actually imposed* is the best indication of the seriousness of the particular offense." Ibid., emphasis in original. "Because the contemnor in Frank was not sentenced to any term of imprisonment at all, his contempt was properly treated as a petty offense." Ibid.

The Court then applied Frank to the case before it. The Court wrote: "The Court's reasoning in Frank includes a logical corollary: If the document initiating the contempt prosecution caps the sentence at six months or less, then it's not necessary to wait until sentencing to know whether the Speedy Trial Act will apply – it won't." Ibid. That holding itself has a "logical corollary": if the document initiating the contempt prosecution *does not* cap the sentence, then it *is* necessary to wait until sentencing to know the offense classification. The Seventh Circuit said as much: "Indeed, the Court [in Frank] said its post hoc analysis applies to prosecutions for criminal contempt where no maximum penalty is authorized." Ibid. The Court did not need to so extend its ruling, but it expressly did.

---

was dicta, solely to confirm that a 135-month sentence did not exceed the "statutory maximum" to support an Apprendi challenge.

7

Thus, the Seventh Circuit is clear: if less than twelve months' imprisonment is imposed for contempt, the offense is classed as a misdemeanor. Applying these precedents, the classification of Mr. Griffin's offense must be based on the sentence imposed. While the sentence is not limited in the charging document the way it was in <u>Trudeau</u>, both the Government and Probation have recommended a three-month sentence. This memorandum recommends a sentence of probation. If the Court sentences Mr. Griffin in line with these recommendations, <u>Frank</u> and <u>Trudeau</u> dictate that this offense is a misdemeanor.

### IV.     OBJECTIONS TO THE GUIDELINES CALCULATION

The PSR calculates a total Guidelines level of 15: base offense level 14, treating Mr. Griffin's offense as a felony and applying the most analogous felony guideline, plus two levels each for the vulnerable victim enhancement and abuse of a position of trust, and less three levels for acceptance of responsibility. PSR ¶¶ 35-45. Mr. Griffin challenges the base offense level, both enhancements, and the denial of the Zero-Point Offender reduction.

**A.  The Classification of the Offense Changes the Base Offense Level**

If the Court sentences Mr. Griffin to less than six months' imprisonment, then under the precedent discussed above and 18 U.S.C. § 3559, the offense will be classified as a Class B misdemeanor. U.S.S.G. § 1B1.9 provides that "the sentencing guidelines do not apply to any count of conviction that is a Class B or C misdemeanor or an infraction," and that the Court is free to impose any sentence authorized by statute. Thus, if the Court agrees that Mr. Griffin's offense is a Class B misdemeanor, the appropriate sentence is governed solely by 18 U.S.C. § 3553(a), without reference to any advisory range or Zone restrictions.

If the Court agrees that Mr. Griffin's offense should be classified as a misdemeanor but not specifically as a Class B misdemeanor, that still impacts the Guidelines. U.S.S.G. § 2X5.1, which

instructs us to apply the most analogous offense guideline, begins: "If the offense is a felony for which no guideline has been promulgated. . .." Application Note 3 adds that "This guideline applies only to felony offenses. . . For Class A misdemeanor offenses. . . apply § 2X5.2." Section 2X5.2 is plain: the Base Offense Level is 6. The PSR's base offense level relies on this charge being a felony, which is incorrect based on the case law described above.

### B. The Vulnerable Victim Enhancement Does Not Apply

The offense of which Mr. Griffin is guilty is contempt against the Court. The PSR acknowledges that "[t]here are no identifiable victims in this offense. . . .The defendant's conduct victimizes society's interest against the violation of lawful orders from a Court." PSR ¶ 28. Probation reached the same conclusion in Mr. Lira's case and did not apply the enhancement because "the victim of a contemptuous act or obstruction of justice is a societal interest and not a person." See Lira, 23-cr-54, Government's Objections to the Presentence Investigation Report, Dkt. No. 173, p. 32.

The Government will likely invoke United States v. Cruz, 317 F.3d 763 (7th Cir. 2003) for the proposition that the enhancement can apply to victims beyond the offense of conviction. But Cruz only affirmed an abuse-of-trust enhancement. Its one line on vulnerable victims was dicta that no subsequent authority has relied on. See Lira, 23-cr-54, Sentencing Transcript ("Lira Transcript"), Dkt. No. 186, p. 44. Dicta does not override the plain meaning of the Guideline and Probation's repeated conclusion that Mr. Griffin's and Mr. Lira's contempts had no individual victims.

Nor is the Court the kind of victim this enhancement protects. It is the most powerful actor in this case, holding the contempt power and the powers to compel appearances and testimony and to penalize offenses against it by up to life in prison. Far from being "particularly susceptible" to

9

crime, the Court rightfully exercised its powers to compel Mr. Griffin to testify at a hearing, issued a finding regarding the offense, and now will impose serious punishment. The harm caused by contempt is serious, but the Court is not a vulnerable victim.

### C. The Abuse of Position of Trust Enhancement Does Not Apply

Section 3B1.3 requires more than a holding of a position of trust or special skills. It requires that a defendant used the position or skill to "significantly facilitate[] the commission or concealment of the offense." Being a lawyer is why Mr. Griffin was subject to Judge Durkin's orders and chargeable as a contemnor at all. Thus, that status is already accounted for in the base offense level, and the Guideline specifically guards against double counting: "[the enhancement] may not be employed if an abuse of trust or skill is included in the base offense level." U.S.S.G. § 3B1.3. Mr. Griffin's obligation to report to the Court, the failure to do which became a criminal offense, sprang specifically from his status as a lawyer in a position of trust.

Apart from his position of trust already being accounted for in the base offense level, Mr. Griffin also did not abuse his position or special skills to "significantly facilitate" the offense. His offense was primarily one of omission: failing to notify Judge Durkin. That takes no legal training, and none was used. Judge Durkin raised concerns about Mr. Griffin referring Edelson to conflicted outside counsel and being less than credible in his testimony. Likewise, none of that conduct required or was significantly facilitated by Mr. Griffin's special skills. The PSR's contention that Mr. Griffin used his training to falsely reassure clients (PSR ¶ 40) describes concealment of Girardi's fraud, not commission or concealment of the offense at conviction. It matters under § 3553(a) that Mr. Griffin was a lawyer and in a position of trust in relation to the Lion Air clients, not under this enhancement.

**D. Mr. Griffin is a Zero-Point Offender Under § 4C1.1; Revised Calculation**

Probation agrees that Mr. Griffin is a Zero-Point Offender under § 4C1.1(a). PSR ¶ 44. It denied the two-point reduction based on the application of the vulnerable victim enhancement. If the Court does not apply that enhancement, Mr. Griffin becomes eligible for the two-point reduction. The vulnerable victim enhancement is thus doing significant work in this Guidelines calculation. It alone accounts for a four-level (and two Zone) swing in the Guidelines.

Thus, the respective Guidelines calculations are as follows:

| Sentencing Factor | PSR | Mr. Griffin, Class A Misdemeanor | Mr. Griffin, Felony |
|---|---|---|---|
| Base Offense Level | 14 | 6 | 14 |
| Vulnerable Victim | +2 | — | — |
| Abuse of Position of Trust | +2 | — | — |
| Acceptance of Responsibility | -3 | -2 | -2 |
| Zero-Point Offender | — | -2 | -2 |
| **Total Offense Level** | **15** | **2** | **10** |
| **Advisory Range** | **18–24 mos (Zone D)** | **0-6 mos (Zone A)** | **6-12 mos (Zone B)** |

**V. SENTENCING POSITION REGARDING § 3553(a) FACTORS**

Unlike the analysis under the Guidelines, which focuses narrowly on the offense of conviction, the § 3553(a) factors require a more expansive view of the offense and the offender. That inquiry considers the underlying fraud against the Lion Air victims and Mr. Griffin's and his co-defendants' roles in that. It also includes Mr. Griffin's acceptance of responsibility, his decades of hard work, his clean record, and his personal character. Considered together, the § 3553(a) factors warrant a sentence of probation for Mr. Griffin.

**A. A Non-Custodial Sentence Avoids Unwarranted Disparity (§ 3553(a)(6))**

Section 3553(a)(6) directs the Court to consider the need to avoid unwarranted disparities in sentencing. The Government agreed to recommend no more than four months for Mr. Griffin "given that David Lira received this sentence and Griffin is less culpable." GVO, p. 1. Probation agrees that Mr. Griffin should not receive a higher sentence than Lira. Sentencing Recommendation, p. 4. The Government's own account of the offense explains why.

David Lira was Thomas Girardi's son-in-law and second-in-command at Girardi Keese. By 2019, Lira was the only person besides Thomas Girardi who had signatory authority on the client trust account. "Lira also was a signatory on the firm's IOLTA account and had access to bank statements. Griffin was not privy to that information." GVO, p. 26. Unlike Lira, "Griffin did not have access to GK's bank accounts and was not as high up in the firm as Lira." Id., p. 2. Lira was a "second-in-command" at Girardi Keese, and he knew as early as 2019 that the firm was in financial distress and not paying other clients. Id., p. 26. Even though Mr. Lira could not force Girardi to act, he held much more authority and power than Mr. Griffin ever did.

Mr. Griffin maintains that he did not testify falsely in front of Judge Durkin, and the Government itself draws a firm distinction between his and Mr. Lira's testimonies: "Griffin did not outright lie to Judge Durkin [in] the same manner that Lira did." GVO, p. 25. Lira, by contrast, "provided false testimony." GVO, p. 25. Lira also lied at a previous status hearing. GVO, p. 26. The difference was serious enough that the Government charged Lira with perjury, which it did not do here. GVO, p. 25, n.4. Griffin's "lack of candor with Judge Durkin was nowhere near as egregious as Lira's flat out lies." GVO, pp. 25-26.

Probation and the Government nonetheless recommend a sentence just one month less than Mr. Lira's. Sentencing Recommendation, p. 1; Government's Sentencing Memorandum, Dkt. 24,

12

p. 1. A one-month difference does not reflect the wide difference in culpability between Mr. Griffin and Mr. Lira. Parity in this case is best served by a probationary sentence for Mr. Griffin.

**B.  Mr. Griffin's Characteristics Favor a Non-Custodial Sentence (§ 3553(a)(1))**

Keith Griffin's life outside of the nine months at issue in this case has been a model of respect for the law, professional responsibility, and dedication to his family. Colleagues who have known him for decades describe him consistently as "a person of intelligence, integrity, and strong character." Exhibit A, p. 5. A number of fellow lawyers have written to the Court with full knowledge of this case, describing Mr. Griffin as an asset to the profession, working with "the highest degree of ethics, honesty, and fairness." Id., p. 7. "Mr. Griffin has always taken his responsibilities as an attorney very seriously and is a deeply devoted client advocate." Id., p. 17.

His conduct in this case was no doubt partly due to the fact that he began working at Girardi Keese as a law clerk during law school, went straight in after graduating, and never worked anywhere else until after the events in this case. He spent his entire professional life working for Thomas Girardi, who was so dominant in the California plaintiffs' bar that, as the Government put it at Girardi's trial, "He's Tom Girardi. He is the guy on the cover of these magazines. No one is going to tell him what to do. No one is going to tell him how to run his law firm." See Lira's Objections and Position Paper, pp. 9, 14-15. Still, within that context, Mr. Griffin on numerous occasions pressed, demanded, and warned Tom Girardi of bar and criminal complaints in order to get the Lion Air clients paid. He was rebuffed and told that the matter was "above his pay grade." Plea Agreement, p. 4. In the assessment of a career prosecutor who has known Mr. Griffin since childhood, Mr. Griffin "was in a no-win situation," and made a choice that "has already cost him dearly." Exhibit A, p. 14.

13

### C. No Purpose of Sentencing Requires Incarceration (§ 3553(a)(2))

For this conduct, Mr. Griffin has already suffered serious consequences. The State Bar of California has suspended his license, and he has been unable to practice law since July 11, 2025. Exhibit B; PSR ¶¶ 78, 81. He has retaken and passed the MPRE as well as various ethics CLE classes. The Bar also imposed $1,250 in sanctions and $26,522 in costs. Exhibit B; Exhibit C. In addition, he has endured more than five years of investigations, civil proceedings, bar proceedings, federal indictment, and public scrutiny by the national press. A close friend of more than twenty-five years observed in Mr. Griffin "a level of anguish, regret, and emotional strain unlike anything I had seen from him before." Exhibit A, p. 5.

By taking responsibility for his conduct and pleading guilty, and by volunteering to testify against Girardi in the Los Angeles trial, Mr. Griffin has demonstrated his contrition and his respect for the law. Specific deterrence has been amply satisfied; there is no chance of Keith Griffin harming a client or being less than candid with a Court ever again. This is not a man from whom society needs to be protected. General deterrence has also already been achieved by this prosecution and the prosecutions of the co-defendants. The entire country has seen three senior figures at the firm go to federal prison. This case has already "changed every attorney's reporting requirements in California." Id., p. 18. The message is clear: fraud against clients, as well as silence or complicity, will be met with harsh punishment. A custodial sentence for Mr. Griffin, the least culpable of the four men, adds no further benefit.

### D. Probation Is Available (§ 3553(a)(3))

Guidelines Levels 1 through 8 are in Zone A, where the Guidelines expressly authorize probation. U.S.S.G. § 5C1.1(a). Thus, whether the Court classifies this case as a Class B misdemeanor (to which the Guidelines do not apply), a Class A misdemeanor (which puts Mr.

14

Griffin at Level 2), or a felony (which puts Mr. Griffin at Level 10), he is either squarely in or very near to the range for which probation is authorized. Furthermore, Congress has stated that a sentence other than imprisonment is generally appropriate for first time offenders convicted of a non-violent crime. 28 U.S.C. § 994(j). In sentencing Mr. Lira, Judge Rowland varied downward from Level 18 (27 to 33 months) to a sentence of 4 months, a variance of *at least* nine levels. Lira Transcript, p. 46. For Mr. Griffin, whose conduct was much less serious than Mr. Lira's, a small variance and a sentence of probation would be both reasonable and appropriate.

## VI.  CONCLUSION

For all the foregoing reasons, Mr. Griffin respectfully requests that the Court classify his offense as a misdemeanor and impose a sentence of probation. Such a sentence is sufficient, but not greater than necessary, to serve the purposes of sentencing.

Dated: July 23, 2026                     Respectfully submitted,

_____
Mark J. Werksman
Werksman Jackson & Quinn LLP
888 West Sixth Street, Fourth Floor
Los Angeles, California  90017
(213) 688-0460
mwerksman@werksmanjackson.com
Attorney for Keith Griffin

15